IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

TERESE MARIE MEADOWS                                    PETITIONER


v.                          Case No. 5:05CV00156   JMM-JFF


LARRY NORRIS, Director,
Arkansas Department of Correction                      RESPONDENT


## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge James M. Moody.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the

District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## **DISPOSITION**

Before the Court is the Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Magistrate Judge undersigned recommends that the petition be dismissed with prejudice.

On November 7, 2001, a trailer home in Carroll County, Arkansas, which Petitioner's estranged husband, Dale Meadows, had been sharing with Lorraine "Lori" Pattison, caught fire and was destroyed. Ms. Pattison's body was found inside the trailer home. Petitioner subsequently was charged with premeditated capital murder and, in the alternative, capital-felony murder with arson as the underlying felony. She

also was charged with arson and tampering with physical evidence. Dale Meadows was charged with capital murder and arson. He subsequently was convicted of those offenses, and his convictions were affirmed on appeal. *Meadows v. State*, 358 Ark. 396, 191 S.W.3d 527 (2004).

On August 5th, 6th, and 7th of 2003, Petitioner was tried by a Carroll County Circuit Court jury. At the close of the evidence, the State requested that the trial judge instruct the jury on first-degree murder and second-degree murder as lesser-included offenses of capital murder. Trial Transcript, *State v. Meadows*, CR 02-127, p. 794. Petitioner's counsel objected to the submission of instructions on lesser-included homicide offenses, stating that "if [the jury is] going to find her guilty of any homicide, it would be of capital murder and not anything that they might compromise on." Tr. 794. The trial judge, over defense counsel's objection, instructed the jury on capital murder (premeditated capital murder and, in the alternative, capital-felony murder with arson as the underlying felony), first-degree murder, second-degree murder, and tampering with physical evidence. Tr. 801-04. After the trial judge instructed the jury and the jury was escorted from the courtroom, the trial judge and counsel engaged in the following conversation about an arson instruction:

> The Court: I did read two instructions that were not discussed in chambers. That is, the standard concluding instructions on findings, I added the instruction for arson and the instruction for tampering that were not presented to me. I just read it off this one.
>
> [Defense Counsel]: That's fine, Your Honor.
>
> The Court: We'll prepare those and have them available to go into the jury room. Anything further to be placed on the record, at this point, [Prosecutor]?

[Prosecutor]: Not that I'm aware of, Your Honor.

The Court: [Defense Counsel]?

[Defense Counsel]: No. Sir.

Tr. 808.

Defense counsel made no objection with respect to the arson instruction. After closing arguments, the jury was excused to begin its deliberations. During its deliberations, the jury sent a note to the trial judge asking the following questions:

Are we supposed to decide?

1) Capitol [sic] Murder

2) Capitol [sic] Murder 1rst [sic] Degree

3) Capitol [sic] Murder 2nd Degree

One, Two, or Decide between all 3?

The trial judge reinstructed the jury, repeating the instructions previously given, including the following instruction:

If you have reasonable doubt of the defendant's guilt on the charge of capital murder, you will then consider the charge of murder in the first degree. If you have a reasonable doubt of the defendant's guilt on the charge of murder in the first degree, you will consider the charge of murder in the second degree.

Tr. 882.

The jury returned verdicts finding Petitioner guilty of capital murder, second-degree murder, arson, and tampering with physical evidence. Tr. 884-94. The jury found Petitioner not guilty of first-degree murder. Tr. 895-96. The prosecutor stated to

the trial judge that sentencing Petitioner to capital murder and second-degree murder was double jeopardy and suggested finding Petitioner guilty of capital murder, the higher offense. Tr. 896.  Petitioner's counsel stated, "I think they've got inconsistent verdicts." Tr. 896.  The trial judge polled each juror on whether his or her verdict was that Petitioner was guilty of capital murder beyond a reasonable doubt. Tr. 897-98.  After all twelve jurors responded affirmatively, the trial judge found that Petitioner "has been found guilty of capital murder." Tr. 898.  The trial judge subsequently polled each juror on its findings of guilt on the offenses of arson and tampering with physical evidence, and each juror responded affirmatively with respect to each verdict. Tr. 900-02.  After deliberating on the sentence to be imposed, the jury returned sentences of life imprisonment without parole for capital murder, ten years' imprisonment for arson, and three years' imprisonment for tampering with physical evidence. Tr. 905.  Petitioner's counsel moved for a mistrial, arguing that the verdicts were inconsistent. Tr. 906. The trial judge postponed sentencing so that he could research the issue. Tr. 907. A sentencing hearing was held on August 29, 2003.  At the conclusion of the hearing, the trial judge denied Petitioner's motion for mistrial, disregarded the second-degree murder verdict, and sentenced Petitioner to life imprisonment without parole for capital murder, ten years' imprisonment for arson, and three years' imprisonment for tampering with physical evidence. Tr. 931-32.

Petitioner appealed her convictions to the Arkansas Supreme Court and raised the following grounds for reversal:

1.     The evidence was insufficient to support her convictions for capital murder and arson; and

2. The trial court abused its discretion in denying her motion for mistrial because the jury returned inconsistent verdicts for capital murder and second-degree murder.

The Arkansas Supreme Court affirmed Petitioner's convictions. *Meadows v. State*, 360 Ark. 5, 199 S.W.3d 634 (2004). The Court found that because Petitioner failed to argue at trial that the State had not presented sufficient evidence on the alternative charge of premeditated capital murder, she failed to preserve the argument for appeal. *Id.* at 12, 199 S.W.3d at 638-39. Accordingly, the Supreme Court only addressed Petitioner's argument that the evidence was insufficient to support her convictions for capital-felony murder and arson. The Court found that the evidence was sufficient to support those convictions. *Id.* at 12-15, 199 S.W.3d at 639-41. The Court questioned whether Petitioner's argument that the trial court abused its discretion in denying her motion for mistrial because the jury returned inconsistent verdicts was preserved for appeal. *Id.* at 16, 199 S.W.3d at 641. The Court found that Petitioner's motion for mistrial "does not appear to have been made at the first opportunity" because she did not move for a mistrial based on inconsistent verdicts until after the jury had returned its verdicts for sentencing after the penalty phase. *Id.* The Supreme Court cited *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000), for the proposition that a motion for mistrial is procedurally barred when it is not made at the first opportunity. *Id.* The Court found that "[c]ertainly stating defense counsel's mere *belief* that the verdicts were inconsistent is not enough." *Id.* "[I]n addition to the preservation point," the Arkansas Supreme Court found that Petitioner's argument that the trial court abused its discretion in denying her motion for mistrial because the jury returned inconsistent verdicts was without merit. *Id.* at 16-18, 199 S.W.3d at 641-43.

Petitioner did not seek post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure.

On May 11, 2005, Petitioner filed the pending § 2254 petition in this Court.[1] She has raised the following grounds for relief:

1.      The trial court erred by denying Petitioner's motion for mistrial and convicting her of capital murder after the jury returned inconsistent verdicts finding her guilty of both capital murder and second-degree murder while simultaneously acquitting her of first-degree murder;

2.      Trial counsel was ineffective for failing to advance a proper and timely objection on the issue of inconsistent verdicts;

3.      Petitioner's constitutional rights were violated by the State's failure to submit a capital murder verdict form which clearly defined which capital murder statute she was convicted of violating;

4.      *Apprendi v. New Jersey*[2] was violated because:

   a.      The State failed to prove each and every element of capital-felony murder and arson;

   b.      Petitioner's arson conviction was constitutionally deficient because no arson instruction was provided to the jury;

   c.      Petitioner's arson conviction was constitutionally deficient because no non-hearsay evidence was presented to prove that she committed arson;

   d.      Petitioner's capital-felony murder conviction was constitutionally deficient because the State failed to provide an arson instruction to the jury; and

---

[1]   A *pro se* prisoner's petition for writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court. *Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999).  Petitioner signed her petition on May 11, 2005. Although it is unclear when she tendered her petition to prison authorities for mailing, the Magistrate Judge will assume that the date was May 11, 2005.

[2]   530 U.S. 466 (2000).

e.  Petitioner's capital-felony murder conviction was constitutionally deficient because the State failed to prove the underlying felony of arson;

5.  Counsel was ineffective for failing to timely raise and object to the issues raised in Claim 4 at trial and for failing to raise the issues on appeal; and

6.  The trial court violated *Wong Sun v. United States*[2] by erroneously admitting inadmissible hearsay statements made by co-defendant Dale Meadows, which were "<u>not</u> made during and in furtherance of the conspiracy."

In his response to Petitioner's habeas corpus petition, the Respondent asserts that Petitioner's claims are procedurally barred. In considering a petition for federal habeas corpus relief, a district court usually is precluded from considering any issue that a state court has already resolved on an independent and adequate state law ground. *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2001). This includes cases in which the state court judgment turns on an independent and adequate state procedural ground, such as a determination that a claim is procedurally defaulted. *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995); *Reagan*, 279 F.3d at 656. A district court also is ordinarily precluded from considering any claim that a petitioner has failed to "fairly present" to the highest state court. *Wemark v. State*, 322 F.3d 1018, 1020-1021 (8th Cir. 2003); *Trevino v. Dahm*, 2 F.3d 829, 831 (8th Cir. 1993). *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (a petitioner's failure to present his claims to the highest state court results in a procedural default of the claims). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas

---

[2]  371 U.S. 471 (1963).

petition." *Wemark*, 322 F.3d at 1021 (citing *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). "The federal legal theory or theories must plainly appear on the face of the petitioner's state court briefs." *Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994) (holding that petitioner failed to fairly apprise the state court of his federal claim because he did not refer to or rely on federal law in his appellate brief); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991) ("Explicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court"); *Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980) (holding that petitioner failed to present his federal claim to the state courts because his state-court brief did not cite any provision of the Federal Constitution or any federal case); *Morris v. Norris*, 83 F.3d 268, 269 (8th Cir. 1996) ("habeas petitioners must have explicitly cited to the United States Constitution or federal case law in their direct appeal to preserve federal review"). *See also Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court").

Where the state court dismisses a habeas petitioner's claims on independent and adequate state law grounds or the petitioner has failed to fairly present his claims to the state court, the claims are procedurally defaulted, and a federal district court cannot consider them unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged constitutional violation, or actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 744, 750-51 (1991); *Prewitt v.* Goeke, 978 F.2d 1073, 1077 (8th Cir. 1992); *Wemark*, 322 F.3d at 1021-22; *Reagan*, 279 F.3d at 656.

The existence of cause "must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  At a minimum, a petitioner must show that something "*external* to [him], something that cannot be fairly attributed to him," caused the procedural default. *Ivy v. Caspari*, 173 F.3d 1136, 1140 (8th Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. at 753).  For example, a showing that the factual or legal basis for the claim was not reasonably available to counsel, that some interference by officials made compliance impracticable, or that counsel's performance was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), would constitute factors external to the defense and cause for a procedural default. *Coleman v. Thompson*, 501 U.S. at 753.  Where a prisoner has no constitutional right to an attorney, such as in state post-conviction proceedings, any attorney error that led to default cannot constitute cause to excuse the default in federal court. *Coleman v. Thompson*, 501 U.S. at 757; *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997).  A claim of ineffective assistance of counsel must be presented in state court as an independent claim before it may be used to establish cause for a procedural default in a habeas corpus proceeding. *Taylor v. Bowersox*, 329 F.3d 963, 971 (8th Cir. 2003); *Frasier v. Maschner*, 304 F.3d 815, 817 (8th Cir. 2002).

A narrow exception to the cause and prejudice standard exists where the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."

*Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001); *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995). To be credible, "a substantial claim that constitutional error has caused the conviction of an innocent person" must be supported with "new reliable evidence - - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial." *Schlup v. Delo*, 513 at 324; *House v. Bell*, _____ U.S. ____, 126 S. Ct. 2064, 2078 (2006). "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Amrine*, 238 F.3d at 1029).

Petitioner did not fairly present Claims 2 and 5, which allege ineffective assistance of counsel, pursuant to Rule 37, the appropriate state court remedy for ineffective assistance of counsel claims. *Rowe v. State*, 318 Ark. 25, 26-27, 883 S.W.2d 804, 805 (1994) (adjudicating claim, on appeal from the denial of Rule 37 relief, that counsel was ineffective). In Claim 3, Petitioner contends that her constitutional rights were violated by the State's failure to submit a capital murder verdict form which clearly defined which capital murder statute she was convicted of violating. The appropriate state remedy for this claim was direct appeal. *See Spears v. State*, 264 Ark. 83, 86-87, 568 S.W.2d 492, 495-96 (1978) (reversing conviction on direct appeal on the basis that the verdict forms were incorrect). However, Petitioner did not raise Claim 3 in her brief on direct appeal.

In Claims 4(b) and 4(d), Petitioner contends that *Apprendi v. New Jersey*[3] was violated for the following reasons: (1) her arson conviction was constitutionally deficient because no arson instruction was provided to the jury, and (2) her capital-felony murder conviction was constitutionally deficient because the State failed to provide an arson instruction to the jury. The appropriate remedy for these claims was either direct appeal or a petition for post-conviction relief pursuant to Rule 37. *Burton v. State*, 2006 Ark. LEXIS 421 at * 6 (Ark. June 29, 2006) (adjudicating *Apprendi* claim in appeal from the denial of Rule 37 relief). *Cf. Hardman v. State*, 356 Ark. 7, 12-15,144 S.W.3d 744, 747-49 (2004) (adjudicating, on direct appeal, Petitioner's argument that the trial court erred in refusing to give jury instructions on lesser-included offenses); *Gaines v. State*, 354 Ark. 89, 93-98, 118 S.W.3d 102, 103-07 (2003) (adjudicating, on direct appeal, Petitioner's argument that the trial court erred in refusing to give an instruction on a lesser-included offense).  As noted above, Petitioner did not seek relief pursuant to Rule 37.  Not only did Petitioner fail to cite *Apprendi* in her brief on direct appeal, she did not complain that no arson instruction was given to the jury, much less argue that her constitutional rights were violated because no arson instruction was given to the jury. In adjudicating Petitioner's argument that the trial court abused its discretion in denying her motion for mistrial because the jury returned inconsistent verdicts, the Arkansas Supreme Court did note that an arson instruction was not included in the record, even though the circuit judge specifically announced that he had instructed the

---

[3] In *Apprendi*, the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. at 490.

jury on arson. *Meadows v. State*, 360 Ark. at 18, 199 S.W.3d at 642. The Supreme Court found that even if the arson instruction had not been given, the jury "could well have convicted Meadows of premeditated capital murder since it was instructed on that offense, all of which would render the arson instruction irrelevant." *Id.,* 199 S.W.3d at 642-43. The Court found "no reversible error in this regard." *Id.*, 199 S.W.3d at 643. In so finding, the Court did not consider the federal constitutional significance of any error by the trial court in failing to instruct the jury on arson. The Magistrate Judge finds that Petitioner did not fairly present Claims 4(b) and 4(d) in state court.

In Claims 4(a), 4(c), and 4(e), Petitioner contends that *Apprendi* was violated for the following reasons: (1) the State failed to prove each and every element of capital-felony murder and arson, (2) her arson conviction was constitutionally deficient because no non-hearsay evidence was presented to prove that she committed arson, and (3) her capital-felony murder conviction was constitutionally deficient because the State failed to prove the underlying felony of arson. To the extent that Claims 4(a), 4(c), and 4(e) are construed simply as *Apprendi* claims, they are procedurally defaulted. To the extent they are construed as due process challenges to the sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979), they are without merit as will be discussed below.

The appropriate state remedy for Claim 6, in which Petitioner contends that the trial court violated *Wong Sun* by erroneously admitting inadmissible hearsay statements made by co-defendant Dale Meadows, was direct appeal. *Baird v. State*, 357 Ark. 508, 515-16, 182 S.W.3d 136, 141 (2004) (adjudicating, on direct appeal, the defendant's argument, which relied on *Wong Sun*, that trial court erred in denying defendant's

motion to suppress statements).  However, Petitioner did not present Claim 6 on direct appeal.

Petitioner contends that her claims are not procedurally defaulted because under Ark. Sup. Ct. R. 4-3(h), the Arkansas Supreme Court, when the sentence is death or life imprisonment, "must review all errors prejudicial to the appellant in accordance with Ark. Code Ann. §16-91-113(a)."  If this Court were to accept Petitioner's argument and conclude that where a habeas petitioner who is sentenced to death or life imprisonment fails to present her federal claims to the Arkansas Supreme Court, her claims are not procedurally defaulted in light of the Supreme Court's obligation under Rule 4-3(h) to review, on direct appeal, all errors prejudicial to the appellant, such a conclusion would be inconsistent with well-established United States Supreme Court and Eighth Circuit precedent holding that a petitioner's failure to present her claims to the highest state court results in a procedural default of the claims. In *Moormann v. Schriro*, 426 F.3d 1044 (9th Cir. 2005), the Ninth Circuit addressed an argument substantially identical to the one Petitioner is making in this case. The Court rejected the petitioner's argument that statutorily required independent review on direct appeal by the Arizona Supreme Court for fundamental errors affecting the judgment and sentence constituted a full and fair presentation of the petitioner's federal claims and that several of his claims therefore were not procedurally defaulted. *Moormann*, 426 F.3d at 1057-58.  It also is important to note that the Eighth Circuit has held that "a properly limited plain error review by a state court does not cure procedural default." *Toney v. Gammon*, 79 F.3d 693, 699 (8th Cir. 1996).

The Magistrate Judge concludes that Claims 2, 3, 4 (other than a due process

challenge to the sufficiency of the evidence to support Petitioner's convictions for arson and capital-felony murder), 5, and 6 are procedurally defaulted even though the Arkansas Supreme Court is required to review, on direct appeal, all errors prejudicial to the appellant pursuant to Rule 4-3(h).  Even if the Court were to hold that Petitioner could avoid her procedural default in light of the Arkansas Supreme Court's obligation under Rule 4-3(h) to review, on direct appeal, all errors prejudicial to the appellant, this holding would not apply to her ineffective assistance of counsel claims as they either were not cognizable on direct appeal or could not have been raised on direct appeal. A claim of ineffective assistance of counsel is not cognizable on direct appeal unless "the appellant first presented the claim to the trial court during the trial or in a motion for new trial."  *Walker v. State*, 330 Ark. 652, 657, 955 S.W.2d 905, 908 (1997); *Smith v. State*, 328 Ark. 249, 250, 943 S.W.2d 234, 235 (1997).  Furthermore, the Arkansas Supreme Court will not consider an ineffective assistance of counsel claim on direct appeal unless "the surrounding facts and circumstances were fully developed either during the trial or during other hearings conducted by the trial court." *Walker,* 330 Ark. at 658, 955 S.W.2d at 908; *Chavis v. State*, 328 Ark. 251, 253, 942 S.W.2d 853, 854 (1997).  Petitioner did not present, during her trial or in a motion for new trial, her claims that trial counsel was ineffective, and the facts and circumstances surrounding trial counsel's ineffectiveness were not developed at trial or during hearings conducted by the trial court.  With respect to Petitioner's claim that counsel was ineffective for failing to present the issues raised in Claim 4 on direct appeal, this claim could not have been raised on direct appeal.

As cause for her procedural default of her ineffective assistance of counsel

claims, Petitioner asserts that interference by state officials made compliance impracticable because the Arkansas Supreme Court, by finding no merit to her appeal, made it impossible for her "to show the court the errors made by ineffective counsel." The Magistrate Judge finds that the Arkansas Supreme Court's determination that Petitioner's appeal had no merit does not constitute cause for her failure to raise her ineffective assistance of counsel claims pursuant to Rule 37. A state appellate court decision finding that an appeal is without merit certainly does not constitute interference by state officials. Petitioner also asserts that the State's concealment of false testimony by several witnesses constitutes cause for her procedural default. However, she has not explained how the State's concealment of false testimony caused her failure to raise her procedurally defaulted claims in state court. The Magistrate Judge finds that Petitioner has not shown cause for her procedural default.

Petitioner also asserts that she is actually innocent. Petitioner alleges that Linda Jane Pierpont, a long-time acquaintance who testified on Petitioner's behalf at her trial, has discovered evidence proving Petitioner's actual innocence. Petitioner alleges that Ms. Pierpont contends that "the Carroll County Sheriff's Office was less than scrupulous while conducting interviews." She also alleges that Ms. Pierpont discovered several video tapes that were the basis for the State's case against Petitioner, that the video tapes were lost and never admitted into evidence, and that Ms. Pierpont "has two (2) videos and the typed version of witness Statements vary from the video's." Petitioner has submitted a letter from Ms. Pierpont to the Magistrate Judge undersigned. Ms. Pierpont sent the same letter directly to the Magistrate Judge undersigned and enclosed a copy of a compact disc, which she alleges is a copy of "an audio tape made

in April 2003, following a conversation with Thomas Conner," a witness for the State at Petitioner's trial in August of 2003. Ms. Pierpont alleges that the compact disc contains a description by Grace Lange-Way, a friend of Ms. Pierpont, of a conversation between Lange-Way and Thomas Conner.  Ms. Pierpont states that the contents of the compact disc "will not be as enlightening as Terese believes it will be," but that she can call attention "to information that might be helpful."  Ms. Pierpoint alleges that she believes Petitioner is innocent for the following reasons, among others: (i) Thomas Conner "is not known to be a truthful man" and "is rarely sober"; (ii) Mr. Conner was a close companion of Lori Pattison, the victim, and was convicted of accidentally shooting Lori's husband in the head five months before her death, (iii) Mr. Conner gave several accounts of the fire, and for over a year denied being present at all; (iv) "6 weeks before the fatal fire, Dale Meadows was involved in an identical fire, which caught Ms. Pattison asleep in the trailer bedroom"; (v) "the explanation for the first fire was nearly identical to the explanation for the second fire"; (vi) Petitioner was not in the area at the time of the first fire; (vii) a witness, Patty Lively, in a video tape of an interview, expressed fear of Dale Meadows only, and initially denied fear of Petitioner; (viii) the typed interview varies from the video tape; and (ix) video tapes of interviews of other witnesses were lost.

The Magistrate Judge undersigned has listened to the compact disc, which contains a bizarre, rambling conversation, apparently between Grace Lange-Way and Ms. Pierpont, concerning, *inter alia*, one of the women's stress reactions when visiting the murder scene (including a "black flash," arm pain, and an "ice cold feeling"), Lori Pattison's "yearning" for self-mutilation, and Thomas Conner's conversation with Ms.

-17-

Lange-Way about Conner's accidental shooting of Lori Pattison's husband. The compact disc contains no information or evidence even tending to show that it is more likely than not that no reasonable juror would have convicted Petitioner in light of the information or evidence.

Petitioner also alleges that Thomas Conner had an affair with Lori Pattison one week after Pattison's husband's death and that Pattison subsequently "started an affair" with Dale Meadows. She alleges that Mr. Conner was bitter over the affair and "this would have shown cause" for his wanting revenge. Petitioner also alleges, *inter alia*, that the State presented false testimony by several witnesses.

The Magistrate Judge finds that much of the "evidence" submitted by Petitioner and Ms. Pierpont is not new as it either was presented at Petitioner's trial, available at the time of trial, or could have been discovered earlier through the exercise of due diligence. For example, at Petitioner's trial Thomas Conner admitted that he had told several versions of what happened on the day of Lori Pattison's murder. He also testified that he was a chronic alcoholic and that he was intoxicated on the day of Lori Pattison's murder. Mr. Conner testified that Lori Pattison's husband died in an accidental shooting and that he (Conner) was there when Pattison's husband died. Not only is much of the evidence not new, it does not constitute reliable evidence demonstrating that it is more likely than not that no reasonable juror would have convicted Petitioner in light of the new evidence. The Magistrate Judge recommends that Claims 2, 3, 4 (other than a due process challenge to the sufficiency of the evidence to support Petitioner's convictions for arson and capital-felony murder), 5, and 6 be dismissed with prejudice as procedurally barred.

In Claim 1, Petitioner contends that the trial court erred by denying Petitioner's motion for mistrial and convicting her of capital murder after the jury returned inconsistent verdicts finding her guilty of both capital murder and second-degree murder while simultaneously acquitting her of first-degree murder. In the interest of judicial economy, the Magistrate Judge declines to address whether Claim 1 is procedurally barred as the claim is easily resolvable against Petitioner on the merits while the procedural bar analysis is complicated. *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1989) ("Judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated").

On direct appeal, the Arkansas Supreme Court rejected Petitioner's argument that the trial court abused its discretion in denying her motion for mistrial because the jury returned inconsistent verdicts for capital murder and second-degree murder, finding as follows:

> For her second point, Meadows argues that the circuit court abused its discretion in denying her motion for a mistrial, because the jury returned inconsistent verdicts for capital murder and second-degree murder. Meadows also argues that the inconsistency was not cured by the court's reinstructing the jury or by its polling the jury on the capital murder verdict alone, because the court should also have polled the jury on its verdict for second-degree murder.
>
> We have said that a mistrial is an extreme remedy that should be used only when the error is beyond repair and cannot be corrected by any curative relief. *See, e.g., Ray v. State*, 342 Ark. 180, 27 S.W.3d 384 (2000). A circuit court's decision to grant or deny a mistrial will not be disturbed absent a showing of an abuse of discretion. *See id.*
>
> . . .
>
> Meadows's arguments on appeal are without merit. *See Ferguson v.*

*State, supra* (legitimacy of denying mistrial motion addressed, although motion appeared to be made late). She contends that the verdicts of capital murder and second-degree murder were inconsistent and should not be allowed to stand. This court has found "inconsistent" verdicts to be those verdicts with some logical impossibility or improbability implicit in the jury's findings. *See Ray v. State, supra*.

In the case at hand, any ostensible confusion on the jury's part evidenced by the completion of the verdict forms for both capital murder and second-degree murder was cured when the circuit judge polled the jurors individually on whether each juror had found that Meadows was guilty of capital murder beyond a reasonable doubt. Each juror responded affirmatively that he or she had. The sentencing phase then followed the finding of guilt, and the jury sentenced Meadows to life in prison without parole.

Polling individual jurors on whether this was each juror's verdict is an entirely reasonable method for confirming a verdict. Indeed, this court recently affirmed a death sentence where each juror confirmed that that was his or her decision. *See Robbins v. State*, 356 Ark. 225, 149 S.W.3d 871, 2004 Ark. LEXIS 130 (2004). Furthermore, in a case with facts very analogous to those of the instant case, the Wyoming Supreme Court held that where the jury found the defendant guilty of both greater and lesser offenses, polling the jury on the greater offenses and sentencing the defendant accordingly was the appropriate way to proceed. *See Johnson v. State*, 695 P.2d 638 (Wyo. 1985).

In addition, polling the jurors on second-degree murder as well as capital murder was not required. The jury had already assured the circuit judge that each member had determined Meadows was guilty of capital murder beyond a reasonable doubt, which, of course, is a homicide two degrees higher than second-degree murder. Moreover, this court discussed Ark. Code Ann. § 5-1-110(b) (1987) (lesser-included offenses), in a case involving prosecution for more than one offense for the same conduct under Ark. Code Ann. § 5-1-110(a) (1987):

> . . . We have repeatedly interpreted this statute to mean that a defendant may be prosecuted for more than one offense, but, under specified circumstances, a judgment of conviction may only be entered for one of the offenses. *Hickerson v. State*, 282 Ark. 217, 667 S.W.2d 654 (1984); *Swaite v. State*, 272 Ark. 128, 612 S.W.2d 307 (1981). Perhaps the best example of the way the statute is intended to work is in the case where a prosecutor is entitled to go to the jury and ask for conviction on the greater

or the lesser offense, and the jury might find a defendant guilty of both the lesser included offense and the greater offense. Under the statute, the trial court should enter the judgment of conviction only for the greater conviction. The purpose of the statute in such a case is to allow a conviction of the lesser included offense when the accused is not convicted of the greater offense, but the trial court is clearly directed to allow prosecution on each charge.

*Hill v. State*, 314 Ark. 275, 282, 862 S.W.2d 836, 840 (1993). *See also Johnson v. State, supra.* The quoted language specifically discusses what a circuit judge should do when a jury returns a verdict for a greater and lesser-included offense. It says the judge shall enter judgment for the greater offense, which is precisely what the circuit judge did here. Indeed, the circuit judge specifically referred to the *Hill* decision and relied on it before pronouncing sentence [footnote omitted].

As a final point, we note an arson instruction was not included in the record, even though the circuit judge specifically announced, as quoted in this opinion, that he had instructed the jury on arson. Of course, it is the obligation of the appellant to present this court with a complete record for purposes of appeal. *See, e.g., Shankle v. State*, 309 Ark. 40, 827 S.W.2d 642 (1992); *Heinze v. State*, 309 Ark. 162, 827 S.W.2d 658 (1992). We further observe that even if the arson instruction had not been given, the jury still was instructed, in the alternative, on capital murder committed with premeditated and deliberated purpose. The jury could well have convicted Meadows of premeditated capital murder since it was instructed on that offense, all of which would render the arson instruction irrelevant. We certainly find no reversible error in this regard.

In short, the circuit judge entered judgment for the greater offense found by the jury after polling the jurors individually to be certain of their guilty verdict as an additional precaution. The jury subsequently returned a sentence in the penalty phase of life without parole, which relates to capital murder - not second-degree murder. We hold that the circuit judge did not abuse his discretion in denying the motion for a mistrial.

*Meadows v. State*, 360 Ark. at 15-18, 199 S.W.3d at 641-43.

This Court's power to review state court decisions in habeas corpus cases is restricted to the "limited and deferential review" mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Ryan v. Clarke*, 387 F.3d 785, 790 (8th

Cir. 2004) (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004)). Under the AEDPA, if a claim has been adjudicated on the merits in state court, a federal court shall not grant habeas relief unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Ligqins v. Burger*, 422 F.3d 642, 646-647 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1359 (2006); *Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004); *Johnston v. Luebbers*, 288 F.3d 1048, 1051 (8th Cir. 2002).

"A state court decision is 'contrary to' clearly established federal law if the rule applied by the state court directly contradicts Supreme Court precedent or if the state court reached a result opposite a result reached by the Supreme Court on 'materially indistinguishable' facts." *Johnston*, 288 F.3d at 1051 (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "A state court decision involves an unreasonable application of Supreme Court precedent if it correctly identifies the governing legal rules but unreasonably applies them to the facts of the prisoner's case." *Ford v. Bowersox*, 256 F.3d 783, 786 (8th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. at 407). "The focus under the unreasonable application test is 'whether the state court's application of clearly established federal law is objectively unreasonable.'" *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "An incorrect decision is not necessarily unreasonable, and [a district court] may not grant a writ of habeas corpus unless the state court decision is both wrong and

unreasonable." *Palmer v. Clarke*, 408 F.3d 423, 429 (8th Cir. 2005); *Colvin v. Taylor*, 324 F.3d 583, 587 (8th Cir. 2003). "A reasonable application of established federal law 'does not require citation of [United States Supreme Court] cases-indeed, it does not even require awareness of [these cases], so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Cox v. Burger*, 398 F.3d 1025,1030 (8th Cir. 2005) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). "Finally, a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003). The provisions of § 2254(d) mandating deference to state court adjudications on the merits apply to decisions of both state trial courts and state appellate courts. *Newton v. Kemna*, 354 F.3d 776, 782-783 (8th Cir. 2004) (state trial court decisions); *Weaver v. Bowersox*, 241 F.3d 1024, 1030-1032 (8th Cir. 2001) (state trial court and state appellate court decisions); *Ellis v. Norris*, 232 F.3d 619, 622-623 (8th Cir. 2000) (state appellate court decisions). The "summary nature" of a state court adjudication "does not affect the standard of review" mandated by § 2254(d). *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

In *Dunn v. United States*, 284 U.S. 390 (1932), the United States Supreme Court held that a criminal defendant convicted by a jury of one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on other counts. *Id.* at 393-94. In so holding, the Supreme Court stated:

Consistency in the verdict is not necessary. Each count in an indictment

is regarded as if it was a separate indictment. . . . That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.

*Id.*

Subsequently, in *Harris v. Rivera*, 454 U.S. 339 (1981), the United States Supreme Court, relying on *Dunn*, held that any inconsistency in a judge's verdicts convicting one defendant but acquitting a co-defendant does not present a federal constitutional claim cognizable on federal habeas corpus review. *Id.* at 344-48. In so holding, the Supreme Court stated:

Apart from the acquittal of [a co-defendant], this record discloses no constitutional error. Even assuming that this acquittal was logically inconsistent with the conviction of respondent, respondent, who was found guilty beyond a reasonable doubt after a fair trial, has no constitutional right to complain that the co-defendant was acquitted.

*Id.* at 348.

Three years later, in *United States v. Powell*, 469 U.S. 57 (1984), the United States Supreme Court, relying on *Dunn* and *Harris*, held that a jury's inconsistent verdicts, which acquitted the defendant on the charges of conspiracy to possess cocaine and possession of cocaine but found her guilty of using the telephone to facilitate those offenses, did not provide a sufficient basis to vacate her conviction. *Id.* at 62-69. In so holding, the Supreme Court stated:

Review [of the sufficiency of the evidence] should be independent of the jury's determination that evidence on another count was insufficient. The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury rationally could have reached a verdict of guilt beyond a reasonable doubt. We do not believe further safeguards against jury irrationality are necessary. . . . [T]here is no reason to vacate the respondent's conviction merely because the verdicts cannot rationally be reconciled.

*Id.* at 67, 69.

The United State's Supreme Court's decisions in *Dunn*, *Harris*, and *Powell* establish that there is no violation of a defendant's constitutional rights even if a jury's verdicts are inconsistent "so long as the evidence before the jury was constitutionally sufficient to convict him." *See Nesbitt v. Hopkins*, 86 F.3d 118, 121 (8th Cir. 1996); *United States v. Fuller*, 374 F.3d 617, 623 (8th Cir. 2004). Based on *Dunn*, *Harris*, and *Powell*, the Eighth Circuit and other federal circuit courts have held that inconsistent verdicts do not warrant granting a mistrial or new trial. *See United States v. Driver*, 945 F.2d 1410, 1414-15 (8th Cir. 1991) (affirming denial of motion for mistrial or new trial due to inconsistent verdicts, concluding, on the basis of *Powell* and *Dunn*, that the fact that the jury instructions "resulted in the jury returning inconsistent verdicts provides inadequate grounds for reversal of [the defendant's] conviction"); *United States v. Abbott Washroom Systems, Inc.*, 49 F.3d 619, 621-28 (10th Cir. 1995) (relying on *Dunn*, *Harris*, and *Powell* and holding that the district court erred in granting a mistrial and new trial on the basis of inconsistent verdicts); *United States v. Cyr*, 712 F.2d 729, 731-35 (1st Cir. 1983) (relying on *Dunn* and *Harris* and holding that inconsistent verdicts did not require a new trial); *United States v. Paone*, 758 F.2d 774, 776 (1st Cir. 1985) (citing *Harris* and concluding that inconsistent verdicts did not require a new trial).

With respect to the sufficiency of the evidence to convict Petitioner of capital-felony murder and arson, the Arkansas Supreme Court found as follows:

> Evidence presented at trial revealed that [Terese "Tracy"'] Meadows arrived at the trailer home of Diane Sprague in Green Forest on November 7, 2001, at approximately 4:30 p.m. Meadows subsequently left Sprague's home and returned between 8:00 and 8:30 p.m. to collect

$ 20 that Sprague owed Meadows. To satisfy the debt, Sprague instead agreed to buy groceries for Meadows at the Wal-Mart in Harrison. Each took her own car, and the women met in the Wal-Mart parking lot. After purchasing groceries, the women went their separate ways. Sprague bought gas for her car and made a few telephone calls at a pay phone before driving back to Green Forest. When she returned home, Sprague found Tracy and Dale Meadows in her home. Dale Meadows told Sprague that his trailer home had exploded and that he tried but failed to remove Lori Pattison from the fire.

Around 12:30 a.m. on November 8, 2001, Gay Lynn Easter passed the trailer home owned by Bob Trigg and occupied by Dale Meadows and Lori Pattison. Easter testified that the trailer home had collapsed and was burning around the edges. She tried to notify Trigg but was unable to contact him. She then telephoned the Carroll County Sheriff's Department to report the fire. Kim Marshall, a dispatcher with the sheriff's department, took Easter's call. According to Marshall, no one reported the fire except for Easter during her shift, which was from 12:00 a.m. until 8:00 a.m. on November 8, 2001.

After being notified of the fire, Gary Coleman, Captain of the Green Forest Volunteer Fire Department, was the first to arrive at the scene. According to Coleman, no one was around the trailer home when he arrived and the structure was "already completely burned down." Coleman testified that he attempted to see if there was anyone in the trailer home, but he could not see anything because it was too dark in the area.

Patty Lively testified that Tracy and Dale Meadows arrived at her home early in the morning of November 8, 2001. Lively testified that Tracy Meadows told her that Dale Meadows had killed Lori Pattison and asked Lively to go with her to the fire scene. When they arrived at the scene, Tracy Meadows walked directly to the area where Lori Pattison's body was located. She then told Lively that the body's remains were Lori Pattison's and then touched them, causing a piece of bone to break. Lively testified that she convinced Meadows to leave the area by promising her that she would later return and help her move the body. The women returned to Lively's home, and Tracy and Dale Meadows left. Lively then contacted her neighbor Brice Sneed and told him about going to the fire scene with Tracy Meadows and about Tracy Meadows touching the body. At about 9:30 a.m., Sneed contacted the Carroll County Sheriff's Department to inform them that Lori Pattison had died in the trailer home fire.

Investigator Alan Hoos with the Carroll County Sheriff's Department

testified that he received Sneed's call. Investigator Hoos and Lieutenant Leighton Ballard visited the scene to search for any human remains, which they found near the remnants of a bed frame. The officers then contacted Arkansas State Police for assistance in the investigation.

According to Investigator Hoos, while at the fire scene, he noticed Tracy Meadows drive by in her vehicle. He conducted a traffic stop on Meadows and she was subsequently transported to the sheriff's department for an interview. According to Lieutenant Ballard, Meadows admitted that she found and touched the body but stated that Dale Meadows was responsible for whatever had happened. Tracy Spencer, an investigator with the Arkansas State Police who conducted Meadows's interview, also testified that Tracy Meadows stated that she had nothing to do with Lori Pattison's death or with the fire.

A forensic pathologist with the Arkansas State Crime Lab, Dr. Steven Erickson, testified that he examined the remains of Lori Pattison. Due to the condition of the remains, Dr. Erickson was unable to determine whether the victim had suffered stab wounds. But Dr. Erickson stated that she was alive at the time of the fire and died from smoke inhalation.

At the jury trial, Thomas Conner testified that he was in the trailer home with Dale Meadows and Lori Pattison on November 7, 2001, and that they had been drinking alcoholic beverages all day. According to Conner, Tracy Meadows arrived with a folding knife in her hand and asked where Lori Pattison was. Meadows then went into the bedroom where Lori Pattison was hiding from her. Shortly thereafter, Conner heard Lori Pattison scream for help. Dale Meadows next went into the bedroom. He later returned to the living room and stated that Tracy Meadows had killed Lori Pattison. Conner testified that Dale Meadows had blood on his forearms and on his blue jeans and told him to leave. As he was leaving, Conner saw Dale Meadows take a can of kerosene from the front porch and enter the trailer home with it. In addition, Earl Lee Sewell testified at trial that he overheard Tracy Meadows say that she killed Lori Pattison. Eddie Craig Monarch also testified that Tracy Meadows told him that she killed Lori Pattison, that Dale Meadows poured kerosene throughout the trailer home, and that he and Tracy Meadows lit it on fire.

Reviewing the presented evidence in the light most favorable to the State and considering only the evidence that supports that jury's verdict, there was substantial evidence presented to compel the jury's conclusion that Meadows was guilty of capital murder and of arson. The jury heard testimony that Meadows admitted killing Lori Pattison and that she was involved in starting the fire in the trailer home that eventually caused Lori Pattison's death. Meadows's arguments that the testimony was inherently

improbable, physically impossible, and unbelievable are unpersuasive. It falls within the province of the jury to resolve questions of conflicting testimony and inconsistent evidence, and the jury chose in the instant case to believe the witnesses supporting the State's theory of the case rather than the defendant's. Meadows's argument regarding sufficiency of the evidence is without merit.

*Meadows v. State*, 360 Ark. at 13-15, 199 S.W.3d at 639-41.

In assessing whether there is sufficient evidence to support a conviction, a federal court's scope of review is "extremely limited." *Sera v. Norris*, 400 F.3d 538, 543 (8th Cir. 2005) (quoting *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003)). "It is not relevant whether [the court] believe[s] that the evidence at trial established guilt beyond a reasonable doubt." *Sera*, 400 F.3d at 543. Rather, under *Jackson v. Virginia* the court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sera*, 400 F.3d at 543 (quoting *Jackson v. Virginia*, 443 U.S. at 318-319); *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000). "This standard recognizes that it is the province of the fact-finder, not this court, 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Sera*, 400 F.3d at 543 (quoting *Jackson v. Virginia*, 443 U.S. at 318-319).

A person commits capital murder if "[a]cting alone or with one (1) or more other persons, [she] commits or attempts to commit arson, and in the course of and in furtherance of the felony or in immediate flight therefrom, [she] or an accomplice causes the death of any person." Ark. Code Ann. 5-10-101(a)(2) (Repl. 1997). A person commits arson if she "starts a fire or causes an explosion with the purpose of

destroying or otherwise damaging: (1) An occupiable structure or motor vehicle that is the property of another person; . . . or (3) Any property, whether [her] own or that of another person, if the act thereby negligently creates risk of death or serious physical injury to any person." Ark. Code Ann. 5-38-301(a)(1) & (3) (Repl. 1997). A person also commits capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, [she] causes the death of any person." Ark. Code Ann. 5-10-101(a)(4) (Repl.1997).

In considering the evidence in a light most favorable to the prosecution, the Magistrate Judge finds that any rational trier of fact could have found the essential elements of arson, capital-felony murder with arson as the underlying felony, and premeditated capital murder. The Magistrate Judge finds that Petitioner's claim that the trial court erred by denying her motion for mistrial and convicting her of capital murder after the jury returned inconsistent verdicts on the murder offenses does not implicate the Constitution. Petitioner has not shown that the Arkansas Supreme Court's adjudication of her claim that trial court abused its discretion in denying her motion for mistrial because the jury returned inconsistent verdicts is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Petitioner also has not shown that the Arkansas Supreme Court's adjudication of her claim that the evidence was insufficient to support her convictions for arson and capital-felony murder is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Finally, Petitioner has not demonstrated that the Arkansas Supreme Court's adjudication of her claims resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In conclusion, the Magistrate Judge recommends that Petitioner's claim that the trial court erred by denying Petitioner's motion for mistrial and convicting her of capital murder after the jury returned inconsistent verdicts on the murder offenses and her claim that that the evidence was insufficient to support her convictions for arson and capital-felony murder be dismissed with prejudice.

THEREFORE, the Magistrate Judge recommends that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed with prejudice.

Dated this 4th day of April, 2007.


_____ /s/ John F. Forster, Jr. _____
UNITED STATES MAGISTRATE JUDGE